**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **FHP TECTONICS CORP.,** | ) | |
| **Plaintiff** | ) | |
| | ) | **Civil Action No.**_____ |
| **v.** | ) | |
| | ) | |
| **OGDEN CONSTRUCTION, INC. and** | ) | |
| **SOUTHERN EARTH SCIENCES, INC.,** | ) | |
| **Defendants.** | ) | |
| | ) | |

## COMPLAINT

TO THE HONORABLE JUDGES OF THIS COURT:

NOW COMES, the Plaintiff, FHP Tectonics Corp. ("FHP"), through its undersigned counsel, and hereby states for its Complaint against Defendants, Ogden Construction, Inc. ("Ogden") and Southern Earth Sciences, Inc. ("SES") as follows:

## THE PARTIES

1.      Plaintiff FHP is a corporation organized and existing under the laws of the State of Illinois with a principal place of business in Chicago, Illinois.  FHP is a construction contracting company authorized to do business in the State of Louisiana.

2.      Upon information and belief, Defendant Ogden is a corporation organized and existing under the laws of the State of Alabama, with its principal place of business in Mobile, Alabama.  Ogden is authorized to do business in the State of Louisiana.

3.      Upon information and belief, Defendant SES is a corporation organized and existing under the laws of the State of Alabama, with its principal place of business in Mobile, Alabama.  SES is authorized to do business in the State of Louisiana.

4.      FHP was the prime contractor for the renovations and additions to the Audubon School in New Orleans, Louisiana for the Owner, Orleans Parish School Board.

5.      FHP entered into separate subcontracts with Ogden and SES by which Ogden and SES were required to provide various services, material and/or equipment for the Audubon School project.

## JURISDICTION AND VENUE

6.      The Court has personal jurisdiction over Ogden, which is registered to transact business in the State of Louisiana, and did transact business in Louisiana during the construction of the Project.

7.      The Court has personal jurisdiction over SES, which is registered to transact business in the State of Louisiana, and did transact business in Louisiana during the construction of the Project.

8.      The Court has subject matter jurisdiction over this action by virtue of the diversity of citizenship of the parties under 28 U.S.C. §1332.

9.      The matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.00.

10.     Venue is proper in this Court under 28 U.S.C. §1391 because a substantial part of the events giving rise to this claim occurred in this District.  The construction project at issue in this Complaint is located in the Orleans Parish, which is within the jurisdiction of this Court. Moreover, the parties specifically agreed to venue in this Court in both the FHP-Ogden subcontract and the FHP-SES subcontract.

## CONDITIONS PRECEDENT

11.     All conditions precedent to the filing of this Complaint have occurred or have been waived.

## FACTUAL ALLEGATIONS

12.     On or about March 21, 2012, Plaintiff FHP entered into a contract (the "General Contract") with the Orleans Parish School Board ("Owner") for renovations and additions to the Audubon School in New Orleans, Louisiana (the "Project") in the amount of $12,415,000.00. The General Contract was recorded as Instrument No. 1098914 in the mortgage records of Orleans Parish.  Generally, the Project consisted of renovations to the existing school building, built in 1922, and the addition of a 3-story building constructed with steel framing supported on a pile foundation.

13.     The Owner issued Notice to Proceed to FHP on May 23, 2012, authorizing FHP to commence construction on the Project.  Pursuant to the General Contract, substantial completion of the Project was required within 487 days from the Notice to Proceed, or by September 22, 2013.

14.     In the event substantial completion was not achieved within the stipulated time, the General Contract provided that FHP would owe liquidated damages at the rate of $5,000.00 per calendar day of delay in achievement of substantial completion.

15.     FHP entered into a subcontract with Defendant Ogden on or about April 5, 2012 (the "Ogden Subcontract") by which Ogden agreed to perform certain portions of the Project work.  Specifically, Ogden was engaged to erect the structural steel, supplied by others, for the additional building, as well as miscellaneous steel.  A true and correct copy of the Ogden Subcontract is attached hereto as Exhibit A.

16.     FHP entered into a subcontract with Defendant SES on or about May 25, 2012 (the "SES Subcontract") for the provision of testing services, including structural steel testing services.  A true and correct copy of the SES Subcontract is attached hereto as Exhibit B.

01090538-1                                              3

17.    The "Contract Documents" were defined in both the Ogden and SES Subcontracts to include the General Contract, including the specifications, supplementary conditions and Addenda to the General Contract, as well as an extensive list of drawings.  See Exhibit A & B, Schedule B.

18.    Further, pursuant to the Ogden Subcontract, Ogden was required to erect the structural steel in accordance with the Contract Documents, AISC [American Institute of Steel Construction], AWS [American Welding Society] and ASTM [American Society for Testing and Materials].  Exhibit A, Schedule A, No. 54.

19.    Pursuant to the SES Subcontract, SES was required to comply with all testing and inspection requirements of the General Contract, as well as "provide all inspections and reporting for all steel members at the shop and erection as the jobsite including, but not limited to, visual and ultrasonic inspection of welds, equipment, materials, workmanship, bolted connections, fabrication and erection."  Exhibit B, Schedule A, Nos. 52, 72.

20.    Ogden began the erection of the structural steel for the addition in or about April 2013.

21.    SES produced four reports related to the structural steel framing between April 30 and September 30, 2013.  In each of the reports, SES reports that plumbness of the columns was checked using a 1/500 tolerance.   In only one instance did SES report that a column was (slightly) out of tolerance.

22.    On or about September 26, 2013, FHP informed SES that the steel columns appeared to be out of plumb.  Subsequent inspections and surveys confirmed that the structural steel had not been erected in accordance with the Contract Documents, and not in compliance with the applicable AISC Codes.

23.     On November 5, 2013, the Owner's Architect issued a Nonconforming Work Notice noting that several columns were installed outside of tolerances required by AISC "Code of Standard Practice for Steel Buildings and Bridges" and certain decks were not level.  The Owner's Architect noted that further measurements were needed to determine if other portions of the structural steel were out of tolerance and to determine the viability of the steel in place.

24.     An extensive investigation of the structural steel ensued, and it was discovered that 21 of the 28 steel columns for the addition failed to satisfy the AISC Code plumbness requirements.

25.     The investigation of the deficiently installed structural steel and the design of the necessary corrective actions lasted until approximately July 17, 2014.

26.     Once the corrective actions were designed and approved, the correction of the structural steel deficiencies lasted until March 23, 2015.  FHP engaged other firms to perform this corrective work, at significant expense.  Other work that had already been installed required remedial work as well as a result of the steel repairs.  This other remedial work affected by the steel correction work took until April/May of 2015 to complete.

27.     Ultimately, the Project was declared substantially complete and a certificate of occupancy issued on August 14, 2015, or 691 days after the required substantial completion date in the General Contract.

28.     As a result of the deficient steel erection work performed by Ogden, its lack of quality assurance as required by the Ogden subcontract and the AISC Codes, and the failure of SES to properly perform its testing and inspection functions related to the structural steel, FHP has incurred significant monetary damages for the correction of the structural steel, removal and

repair of other work impacted by the steel correction work, delay damages, and exposure to Owner liquidated damages for delay in the substantial completion of the Project.

## BREACH OF CONTRACT (AGAINST OGDEN)

29.     FHP re-alleges and re-avers each and every previous allegation as if fully set forth herein.

30.     Defendant Ogden materially breached the FHP-Ogden Subcontract by failing to erect the structural steel in accordance with the Contract Documents, applicable AISC Codes, and the standards generally applicable in the industry.  Ogden, among other things, breached the Ogden Subcontract by:

a.   Failing to properly erect the structural steel to the plumbness requirements of the Contract Documents;

b.   Failing to provide adequate temporary supports to secure the steel framing against loads encountered during erection; and

c.   Failing to maintain a quality assurance program, as required by the Contract Documents and Codes, to ensure its work was performed in accordance with the Contract Documents and applicable Codes.

31.     As a direct and proximate result of Ogden's material breaches of contract, FHP has suffered damages and is entitled to a judgment of this Court in its favor and against Ogden in the principal sum in excess of $75,000.00, the precise amount to be proven at trial, plus pre-judgment and post-judgment interest.  Additionally, FHP is entitle to recover from Ogden all consequential damages suffered by FHP as a result of Ogden's breaches.

## BREACH OF CONTRACT (AGAINST SES)

32.     FHP re-alleges and re-avers each and every previous allegation as if fully set forth herein.

33.     Defendant SES materially breached the FHP-SES Subcontract by failing to properly test and inspect the structural steel during and after erection to ensure plumbness and conformance with the Contract Documents, AISC Code, and the standards generally applicable to the testing and inspection of structural steel in the industry.

34.     As a result, the steel was belatedly discovered to be out-of-tolerance and substantial sums were expended and delays to the Project were incurred as the structural steel deficiencies were investigated, corrective actions designed, corrective work performed, and repairs to other affected portions of the work were completed.

35.     As a direct and proximate result of SES's material breaches of contract, FHP has suffered damages and is entitled to a judgment of this Court in its favor and against SES in the principal sum in excess of $75,000.00, the precise amount to be proven at trial, plus pre-judgment and post-judgment interest.  Additionally, FHP is entitle to recover from SES all consequential damages suffered by FHP as a result of SES's breaches.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff FHP prays:

a.      That, after due proceedings are had, judgment be rendered in favor of FHP and against Ogden for the principal amount in excess of $75,000.00, the precise amount to be proven at trial, plus pre- and post-judgment interest and costs;

b.      That, after due proceedings are had, judgment be rendered in favor of FHP and against SES for the principal amount in excess of $75,000.00, the precise amount to be proven at trial, plus pre- and post-judgment interest and costs; and

c.      For all other general or equitable relief the Court deems appropriate.

Respectfully submitted,

**DUPLASS, ZWAIN, BOURGEOIS,
PFISTER & WEINSTOCK**

s/Andrew D. Weinstock

_____
**ANDREW D. WEINSTOCK #18495**
3838 North Causeway Blvd. Suite 2900
Metairie, La. 70002
Telephone:  504.832.3700
Fax:  504.837.3119
andreww@duplass.com
**COUNSEL FOR FHP TECTONICS CORP.**

**OF COUNSEL FOR FHP TECTONICS CORP.
ROBERT G. BARBOUR
TIMOTHY E. HEFFERNAN
KEITH C. PHILLIPS
WATT, TIEDER, HOFFAR
& FITZGERALD, L.L.P.**
8405 Greensboro Drive, Suite 100
McLean, Virginia 22102
Telephone: (703) 749-1000
Facsimile: (703) 893-8039
rbarbour@watttieder.com
theffernan@watttieder.com
kphillips@watttieder.com